UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
R.C.C. VENTURES, L.L.C.

                                                                                  **09 Civ. 7874 (DC)**

                                  Plaintiff,

        -against-

PRIME REVENUE INC.

                                Defendant.
------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S FED.R.CIV.P. 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

VINCENTI & VINCENTI, P.C.
80 BROAD STREET
SUITE 1200
NEW YORK, N.Y. 10004
(212) 509-4600
TELECOPIER: (212) 509-0406

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of Defendant's Fed.R.Civ.P. 12(c) motion for judgment on the pleadings. For the reasons set forth below, the Plaintiff's Complaint fails to state a claim for which relief can be granted and the Defendant's motion should be granted in its entirety.

In its Complaint, Plaintiff R.C.C. Ventures, LLC ("R.C.C.") attempts to concoct a breach of contract claim against Defendant PrimeRevenue, Inc. ("PrimeRevenue") by misrepresenting the terms and conditions of a clear and unambiguous financing proposal which R.C.C. itself drafted. The proposal (the "January Proposal", a true and correct copy of which is attached as Exhibit A to PrimeRevenue's First Amended Answer and Counterclaims) explored the following venture debt facility: (1) R.C.C. would loan up to $4 million to PrimeRevenue in exchange for a commitment fee and the issuance of stock warrants (First Amended Answer and Counterclaims, Ex. A: p.1 "Lender" and "Term Loan", p.2 "Commitment Fee" and "Warrants"), (2) PrimeRevenue would deal with R.C.C. exclusively only until February 22, 2009 (Id., Ex. A: p.3 "Exclusivity" and p.4 – thirty days from date contract was signed), and (3) if R.C.C. failed to make this loan, $10,000 of PrimeRevenue's $30,000 acceptance deposit would be refunded (Id., Ex. A: p.3 "Acceptance Deposit").

Despite the above, R.C.C. alleges in its Complaint that the January Proposal did not contemplate R.C.C. lending money to PrimeRevenue, but instead called for it to act as a broker-dealer that would secure other parties – "third party investors" – for purposes of brokering an investment with PrimeRevenue (Complaint, ¶¶6,7). R.C.C., which loaned nothing to PrimeRevenue, claims it is entitled to transaction compensation in the form of a commitment fee and the issuance of stock warrants, the total value of which exceeds $300,000, based on a third-party's investment made on April 30, 2009 - well after the contract's exclusivity period expired (Id. ¶¶8, 9, 12, 13, 17; First Amended Answer and Counterclaims, Ex. A: pp. 3 "Exclusivity" and p. 4). A simple reading of the January Proposal reveals the fatal flaw in R.C.C.'s Complaint: it contains no such provisions.

The Complaint fails to state a claim for another important reason: <u>R.C.C. is not a registered broker-dealer or investment adviser</u> (Affirmation of Paul J. Vincenti dated January 11. 2010 ("Vincenti Aff."), ¶¶2,3, Exs. 1,2; First Amended Answer and Counterclaims, ¶18; Reply to Counterclaims, ¶18). Thus, assuming for a moment all of R.C.C.'s allegations were somehow true, R.C.C.'s purported activities as pleaded in its Complaint would be illegal and the January Proposal would be void and subject to rescission under Sections 15 and 29 of the Securities and Exchange Act of 1934 (the "Exchange Act"). In this case, R.C.C. would be required to return the entire $30,000 acceptance deposit paid by PrimeRevenue.

Moreover, even if there were a breach of the January Proposal, R.C.C.'s remedy would be limited to the retention of PrimeRevenue's $30,000 deposit pursuant to the January Proposal's liquidated damages clause. R.C.C. has retained this deposit, even though the terms of the January Proposal required it to refund $10,000 to PrimeRevenue.

PrimeRevenue's Fed.R.Civ.P 12(c) motion for judgment on the pleadings should be granted, R.C.C.'s Complaint should be dismissed and PrimeRevenue should be awarded $10,000 on its first counterclaim.

## STATEMENT OF FACTS

On or about January 23, 2009, PrimeRevenue signed and accepted the January Proposal that was drafted and sent by R.C.C. in New York to PrimeRevenue in Georgia (First Amended Answer and Counterclaims, Ex. A.: p. 4, Counterclaim ¶4; Reply to Counterclaims, ¶4). The January Proposal contained the following pertinent provisions:

1. The first sentence of the January Proposal states that R.C.C. "is pleased to submit <u>the following Venture Debt proposal</u>" to PrimeRevenue (First Amended Answer and Counterclaims, Ex. A: p.1, first sentence) (emphasis added);

2. R.C.C. is <u>defined as the "Lender"</u> (Id., Ex. A.: p. 1 "Lender");

3. The second sentence of the January Proposal states the following: "This proposal is subject to evaluation and discussion purposes only and should not be considered <u>a commitment by Lender</u>" (Id., Ex. A: p.1)(emphasis added);

2

4. R.C.C. agreed to explore lending up to $4 million to Prime Revenue (Id., Ex. A: p.1 "Term Loan");

5. If R.C.C. provided financing as set forth in the January Proposal, PrimeRevenue would (a) pay R.C.C. a fee equal to 1.25% of the investment which "shall be earned and payable to R.C.C. <u>upon the issuance of the Commitment for this Venture Loan Facility</u> to PrimeRevenue, Inc." (Id., Ex A.: p.2 "Commitment Fee")(emphasis added), and (b) issue warrants to R.C.C. for the purchase of shares of PrimeRevenue's preferred stock at coverage ratios based on a specified percentage of "the Term Loan facility" (Id., Ex. A.: p.2 "Warrants");

6. PrimeRevenue agreed to deal exclusively with R.C.C. in connection with any financing for a period of thirty (30) days from the acceptance of the January Proposal (Id., Ex. A.: p.3 "Exclusivity"), and that it would not circumvent R.C.C. in the event that it sold or assigned "this transaction" to a syndicated investor or introduced it to a third-party (Id., Ex. A.: p.3 "Non-Circumvention").

7. Since the January Proposal was accepted and signed by PrimeRevenue on January 23, 2009, <u>the exclusivity period expired on February 22, 2009</u> (Id., Ex. A.: p.3 "Exclusivity" and p.4 – signature and date); and

8. Together with PrimeRevenue's acceptance of the January Proposal, PrimeRevenue paid R.C.C. an acceptance deposit in the amount of $30,000 (Id., Counterclaim ¶8, Ex. A.: p.3 "Acceptance Deposit"; Reply to Counterclaims, ¶4). In the event that R.C.C. did not provide financing to PrimeRevenue, R.C.C. agreed to refund $10,000 to PrimeRevenue (Id., Ex. A.: p.3 "Acceptance Deposit"). If R.C.C. committed to the financing and PrimeRevenue failed to consummate the transaction contemplated in the proposal or otherwise default, R.C.C. would retain the $30,000 deposit as "a fair and genuine estimate of the damages that would accrue to R.C.C. in the event of such default" (Id.).

In its Complaint, R.C.C. does not allege that the January Proposal called for R.C.C. to make a loan to PrimeRevenue, nor does it claim that R.C.C. provided, committed to provide or even offered to provide any financing to PrimeRevenue. R.C.C. also makes no mention of the January Proposal's exclusivity period or its expiration on February 22, 2009. Instead, it pleads that, pursuant to the January Proposal[1], R.C.C. "agreed to secure financing for defendant" and "undertook to obtain financing for defendant from third-party investors" (Complaint, ¶¶6,7). Therefore, pleads R.C.C., PrimeRevenue breached the January Proposal by failing to pay the commitment fee (in addition to the $30,000 acceptance fee it previously paid to R.C.C.) and to issue the stock warrants to R.C.C. at the time PrimeRevenue received investment proceeds from a third-party, MMV Finance, Inc. ("MMV Finance") (Id., ¶¶8, 12,13). R.C.C. argues that, in exchange for its brokerage services, it is entitled to this success based compensation even though it is not a registered broker-dealer or investment adviser (Vincenti Aff., ¶¶2,3, Exs. 1,2).

R.C.C. does admit in its Complaint that it loaned nothing to PrimeRevenue, PrimeRevenue accepted an investment proposal from MMV Finance on March 16, 2009 and that MMV Finance's investment was made on April 30, 2009 - both subsequent to the expiration of the exclusivity period on February 22, 2009 (Id.; First Amended Answer and Counterclaims, Ex. A, pp. 3 "Exclusivity" and p. 4). Still, R.C.C. alleges that, after the execution of the investment proposal with MMV Finance on March 16th and before the closing of financing on April 30th, PrimeRevenue "attempted to circumvent its agreement with plaintiff and deal with MMV Financial directly, in breach of noncircumvention provision of the January Agreement" (Id., ¶¶8, 11-13).

---

[1]Tellingly, R.C.C. did not attach the January Proposal to its Complaint nor did it cite to any of its specific terms or conditions.

4

## ARGUMENT

## PRIME REVENUE'S MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED IN ITS ENTIRETY

### A. Pursuant to Fed.R.Civ.P.12(c), Defendant is Entitled to Judgment as A Matter of Law

A Fed.R.Civ.P 12(c) motion for judgment on the pleadings is warranted where the material facts are undisputed and the movant is entitled to judgment merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A court should grant the motion and dispose of the claims on the pleadings if the movant is entitled to judgment as a matter of law. Burns Int'l Security Services v. International Union, United Plant Workers of America, 47 F.3d 14, 16 (2d Cir. 1994). When analyzing a Fed.R.Civ.P. 12(c) motion, the court shall consider the pleadings and any exhibits attached thereto. VCG Special Opportunities Master Fund, Ltd. v. Citibank, N.A., 594 F.Supp.2d 334, 339-340, (S.D.N.Y. 2008) aff'd 2009 U.S. App. LEXIS 26621 (2d Cir. 2009); Royal Insurance Company of America v. Sportswear Group, LLC, 85 F.Supp.2d 275, 278 (S.D.N.Y. 2000) (J. Chin). Any matters of which judicial notice can be taken are also considered on such motions. Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert. denied 503 U.S. 960, 112 S.Ct. 1561 (1992).

Under New York and Georgia law[2], the interpretation of a contract is a question of law and, unless the contract is ambiguous, its construction is subject to disposition as a matter of law.

---

[2] In determining which state's law should be applied to a dispute, courts must first determine if there is any conflict between the laws of the relevant jurisdictions. Verzani v. Costco Wholesale Corp., 641 F. Supp. 2d 291, 298 (S.D.N.Y. 2009). The relevant jurisdictions in this dispute are New York and Georgia. The January Proposal: (1) is between R.C.C., a New Jersey limited liability company with its principal offices in New York, and PrimeRevenue, a Delaware corporation with its principal offices in Georgia (Complaint, ¶¶1,2); (2) was prepared and signed by R.C.C. in New York, sent to Prime Revenue in Georgia, and signed and accepted by PrimeRevenue in Georgia (First Amended Complaint, Ex. A: pp.1,4); and (3) contemplates an investment which would have been made by R.C.C., (the lender located in New York) in PrimeRevenue (the borrower located in Georgia) and the issuance of PrimeRevenue stock warrants in Georgia (Id.). See Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317, 618 N.Y.S.2d 609, 612 (1994)("most significant relationship" test examines place of contracting, negotiation and performance; location of the subject matter of the contract; and domicile, residence, place of incorporation and place of business of the parties). There is no conflict of laws issue here since, under either New York or Georgia law, issues concerning the interpretation or construction of unambiguous contracts are disposed of

Metropolitan Life Insurance Co. v. RJR Nabisco, Inc., 906 F.2d 884, 880 (2d. Cir 1990) ("under New York law . . . if a contract is unambiguous on its face, its proper construction is as a matter of law"); Club Associates v. Consolidated Capital Realty Investors, 951 F.2d 1223, 1229 (11th Cir. 1992)(under Georgia law, "the interpretation of the language . . . in a contract is generally a question of law for the court unless it is so ambiguous that the ambiguity cannot be resolved by the ordinary rules of construction")(citations omitted). In a contract dispute, where an examination of the contract's unambiguous[3] terms reveals that the plaintiff has failed to state a cause of action in its complaint, a motion for judgment on the pleadings will be granted as a matter of law. Royal Insurance, 85 F.Supp 2d. at 281; State Bank of India v. Walter E. Heller & Co., 655 F.Supp. 326, 326-327 (S.D.N.Y. 1987).

### B. The January Proposal Called for R.C.C. to Lend Money to PrimeRevenue and Did Not Contemplate R.C.C. Acting as A Broker or Earning a Finder's Fee

The January Proposal, which was drafted by R.C.C., does not contain <u>any</u> of the principal contractual terms pleaded by R.C.C. in its Complaint. In fact, the "Venture Debt" facility described in the January Proposal could not be any clearer: ***R.C.C. is defined as the "Lender"*** (First Amended Answer and Counterclaims, Ex. A: p.1 "Lender"); ***the Commitment*** is defined as one to be made ***"by Lender"*** (Id., Ex. A: p.1, second sentence); the "Term Loan" is defined as a loan to be made ***by R.C.C. as Lender*** (Id, Ex. A: p.1 "Lender", "Term Loan"); and R.C.C. is entitled to the commitment fee and the issuance of stock warrants only upon the issuance of ***"the Commitment" for "<u>this</u> Venture Loan facility"*** or ***"<u>this</u> Term Loan facility"*** based on financing to be provided ***by R.C.C.*** to PrimeRevenue (Id., Ex. A: p.1 "Lender" and "Term Loan", p.2 "Commitment Fee" and "Warrants"). Since the definitions of these terms are unambiguous, alternative definitions advanced by R.C.C. cannot defeat this Fed.R.Civ.P. 12(c) motion. VCG,

---

as a matter of law. Metropolitan Life, 906 F.2d at 880; Club Associates, 951 F.2d at 1229; Verzani, 641 F.Supp 2d at 298.

[3] To the extent there is an ambiguity, it shall be construed against the drafter of the contract. Dream Spa, Inc. v. Fireman's Fund Insurance, 2008 U.S. Dist. LEXIS 8933, *13 (S.D.N.Y. 2008)(New York law); Sievert v. Morlef Holding Co., 241 A.D.2d 445, 446, 663 N.Y.S.2d 978, 979 (2d Dept. 1997)(same); Georgia-Pacific Corp. v. Lieberam, 959 F.2d 901, 905 (11th Cir. 1992)(Georgia law).

594 F.Supp 2d at 341 (definition of term in indenture agreement clear and not subject to interpretation).

There is absolutely nothing in the proposal reflecting that R.C.C. "agreed to secure financing for defendant" or "undertook to obtain financing for defendant from third-party investors", nor is there any provision entitling R.C.C. to the payment of the commitment fee and the issuance of stock warrants based on R.C.C. undertaking brokerage or finder's activities, or upon an investment made by a third-party. These provisions were invented by R.C.C. out of whole cloth. Any argument to the contrary would constitute an attempt to insert new, after-the-fact provisions which were absent in January 2009.

The January Proposal clearly provides that: (1) the commitment fee "shall be earned and payable to R.C.C. ***upon the issuance of the Commitment for this Venture Loan Facility*** to PrimeRevenue, Inc." (First Amended Answer and Counterclaims, Ex. A: p. 2 "Commitment Fee")(emphasis added) and (2) the stock warrants would be based on a percentage of "the Term Loan facility" (Id., Ex. A: p.2 "Warrants"). There is no allegation in the Complaint that "the Commitment" for the "Loan facility", clearly described in the January Proposal as <u>a loan to be made by R.C.C.</u>, was ever issued, nor can there be. There is also no allegation that the January Proposal was sold or assigned to anyone. Indeed, R.C.C. admits in its Complaint that <u>MMV Finance</u>, not R.C.C., provided financing to PrimeRevenue under <u>a separate</u> proposal, term sheet and loan agreement after the expiration of the exclusivity period (Complaint, ¶¶8,12). There is nothing in the January Proposal which triggers the payment of any fee or the issuance of any warrants upon the making of an investment to PrimeRevenue by a third-party. R.C.C. is essentially claiming that the January Proposal calls for a double-billing – PrimeRevenue should have paid the commitment fee and issued the stock warrants, says R.C.C., <u>both</u> to the investor <u>and to R.C.C. as a brokerage fee,</u> even though the document says nothing of the sort and R.C.C. is not a registered broker-dealer (First Amended Answer and Counterclaims, Counterclaim ¶18; Reply to Counterclaims, ¶¶3,5).

### C. PrimeRevenue Could Not Have Circumvented R.C.C. Since the January Proposal's Exclusivity Period Expired on February 22, 2009 and R.C.C. Failed to Loan or Commit to Loan Anything to PrimeRevenue

R.C.C.'s claim that PrimeRevenue circumvented the January Proposal is in direct contravention of the proposal's express terms as well as R.C.C.'s own allegations.

The exclusivity period <u>expired on February 22, 2009</u> – thirty days after PrimeRevenue accepted the January Proposal (First Amended Answer and Counterclaims, Ex. A.: p.3 "Exclusivity" and p.4 – signature and date). R.C.C. has alleged that PrimeRevenue signed a new proposal and term sheet with MMV Finance on March 13th and received investment proceeds from MMV Finance on April 30th – well after the exclusivity period expired (Complaint, ¶¶8, 12).

More importantly, R.C.C. admits that MMV Finance, not R.C.C., provided the financing to PrimeRevenue (Id.). There is no allegation, nor can there be, that R.C.C., who was supposed to be "the Lender" of the funds, offered or committed[4] to loan anything to PrimeRevenue, or sold or assigned the January Proposal to MMV Finance. In fact, R.C.C. claims <u>it merely searched for other investors</u> to provide financing to PrimeRevenue (Complaint, ¶¶6,7). PrimeRevenue, therefore, could not have circumvented anyone or anything.

### D. Even if R.C.C.'s Allegations Were Accurate, the January Proposal Would Be Illegal and Void Under the Exchange Act Since R.C.C. Is Not A Registered Broker-Dealer

Pursuant to the Exchange Act, it is unlawful for an entity to use any instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce, the purchase or sale of any security unless it is registered as a broker-dealer. 15 U.S.C. §78o(a)(1). Accordingly, if an unregistered broker-dealer serves as a solicitor of investors, its actions are illegal and any contract contemplating the performance of those actions, or the payment of

---

[4] The January Proposal clearly and unambiguously provided that it, and R.C.C.'s decision whether to invest funds with PrimeRevenue, was "subject to evaluation and discussion purposes only and should not be considered a commitment by Lender" (First Amended Answer and Counterclaims, Ex. A: p.1). R.C.C. does not plead that it made a commitment or even offered to loan anything to PrimeRevenue, because it never did so. Accordingly, the January Proposal was non-binding and PrimeRevenue's failure to follow any of its provisions, even the fictitious ones pleaded by R.C.C., cannot give rise to a breach of contract claim. <u>L.K. Station Group, LLC v. Quantek Media, LLC</u>, 62 A.D.3d 487, 492, 879 N.Y.S.2d 112, 116 (1st Dept. 2009)(New York law); <u>Hartrampf v. Citizens & Southern Realty Investors</u>, 157 Ga. App. 879, 881, 278 S.E.2d 750, 752 (Ct. of App. 1981)(Georgia law).

consideration for such actions, is illegal and void under the Exchange Act. Id.; 15 U.S.C. §78cc(a) and (b); Lawrence v. The Richman Group of Connecticut, LLC, 407 F.Supp.2d 385, 389-390 (D.Conn. 2005), aff'd 199 Fed. Appx. 55 (2d Cir. 2006) (plaintiff's breach of contract action dismissed at pleadings stage since contract as alleged called for plaintiff, an unregistered broker-dealer, to solicit investors and would be illegal and void). See also SEC v. Rabinovich & Assocs., LP, 2008 U.S. Dist. LEXIS 93595, *13-14 (S.D.N.Y. 2008) and Torsiello Capital Partners LLC v. Sunshine State Holding Corp., 2008 N.Y. Misc. LEXIS 2879, *10-16 (Sup Ct., NY Cty 2008)(breach of contract action dismissed since agreement providing for plaintiff, an unregistered broker-dealer, to find private investors in exchange for retainer fee and success fee equal to percentage of transaction's purchase price was void *ab initio* and subject to rescission).

In deciding a Fed.R.Civ.P. 12(c) motion, the Court may consider matters of which judicial notice may be taken. Roth v. Jennings, 489 F.3d 499, 509 (2d. Cir. 2007); Ackoff-Ortega v. Windswept Pacific Entertainment Co., 130 F.Supp 2d 440, 444 (S.D.N.Y. 2000), aff'd 46 Fed. Appx. 663 (2d Cir. 2002). Judicial notice of the contents (or lack thereof) of documents required to be filed with the Securities and Exchange Commission or other regulatory authority are commonly considered on motions to dismiss pleadings as facts capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned. Id.; Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991). Consideration of public disclosure documents is particularly warranted where the non-movant has full knowledge of such facts. Cortec Industries, 949 F.2d at 48.

We respectfully ask the Court to take judicial notice of the fact that R.C.C. is not a registered broker-dealer or investment adviser (Vincenti Aff., ¶¶2,3, Exs. 1, 2 – no record of registration with the Financial Industry Regulatory Authority (FINRA) or the Securities and Exchange Commission (SEC) over the past two years; First Amended Answer and

Counterclaims, Counterclaim ¶18; Reply to Counterclaims, ¶3[5]). Despite this fact, R.C.C. pleads in its Complaint that the January Proposal called for R.C.C. to act as a broker-dealer: to "secure financing for defendant" and "obtain financing for defendant from third-party investors" (Complaint, ¶¶6,7)[6]. In exchange for these brokerage services, R.C.C. claims it was supposed to receive a success fee, triggered by the investment of a third-party, in the form of a cash payment equal to a percentage of the investment and warrants to purchase PrimeRevenue stock (Id., ¶¶9,10, 13-17).

As set forth above, the January Proposal is devoid of any term providing for R.C.C. to serve as a broker or adviser in connection with securing third-party investors for Prime Revenue. However, if R.C.C. were somehow correct, the January Proposal would be illegal and void. 15 U.S.C. §78cc(a) and (b); Lawrence, 407 F.Supp.2d at 389-390; Torsiello, 2008 N.Y. Misc. LEXIS 2879 at *10-16.

The January Proposal contemplated an investment of up to $4 million in exchange for (1) a promissory note not involving consumer financing, a mortgage, a character loan to a bank customer, a short term loan with a simple lien on some assets, a loan in the ordinary course of business or a loan from a commercial bank for current operations, and (2) warrants to purchase preferred stock of PrimeRevenue. (First Amended Answer and Counterclaims, Ex. A, pp. 1-2). This clearly constitutes the purchase or sale of a "security" as defined in the Exchange Act. 15 U.S.C. §78c(a)(10)(definition of "security" includes a "note" and a "warrant"); Reves v. Ernst & Young, 494 U.S. 56, 65-67, 110 S.Ct. 945, 951-952 (1990)(under family resemblance test, a note is a security unless it falls into a judicially-enumerated exception); Pollack v. Laidlaw Holdings, Inc., 27 F.3d 808, 812-815 (2d Cir. 1994), cert. denied 513 U.S. 963, 115 S. Ct. 425 (1994) (outside of family resemblance test, a transaction is considered a "security" where there is an investment motivation for the transaction, the parties' reasonably expected that the transaction

---

[5] R.C.C. refused to admit or deny this allegation, claiming that it calls for a legal conclusion. We submit that PrimeRevenue's allegation that R.C.C. is not a registered broker-dealer is clearly factual, requiring an admission or a denial at the pleadings stage.

[6] R.C.C. used the instrumentalities of interstate commerce by, among other things, sending the January Proposal from New York to Georgia (First Amended Answer and Counterclaims, Ex. A).

was for investment purposes, and there is no regulatory scheme outside of the securities laws which reduces the risk of the instrument); Roer v. Oxbridge Inc., 198 F.Supp.2d 212, 222-225 (E.D.N.Y. 2001)(loan in exchange for note and issuance of warrants entitling lender to exercise right to purchase stock is a "security" under the Exchange Act)[7].

There is also no question that R.C.C.'s activities described in the pleadings, including actively seeking/finding investors (Complaint, ¶¶6,7) and reviewing financial statements (First Amended Answer, Ex. A: p. 2 "Borrower's Financial Reports" and "Conditions Precedent to Funding"), are the definition of brokerage services. Torsiello, 2008 N.Y. Misc. LEXIS 2879, *12-13. In exchange for its services, R.C.C. claims it was supposed to have been paid and issued success-based fees and stock warrants calculated at a percentage of the gross value of the transaction at closing (Complaint, ¶¶9, 13-17; First Amended Complaint, Ex. A: p.2 "Commitment Fee" and "Warrants"). This transaction-based compensation is "one of the hallmarks of a securities broker". Torsiello, 2008 N.Y. Misc. LEXIS 2879 at *14.

Thus, even if each and every allegation made by R.C.C. is accurate, the January Proposal is void[8] under the Exchange Act and the Complaint should be dismissed on its face.

### E. If there Was A Breach, R.C.C. is Precluded As A Matter of Law from Seeking Damages in Excess of the Liquidated Damages Amount of $30,000

A liquidated damages clause precludes a plaintiff, as a matter of law, from seeking additional damages based upon a breach of contract. United States Fidelity & Guaranty Co. v. Braspetro Oil Services, Co., 369 F.3d 34, 71 (2d. Cir. 2004)(New York law); X.L.O. Concrete Corp. v. John T. Brady & Co., 104 A.D.2d 181, 184-185, 482 N.Y.S.2d 476, 478-479 (1st Dept. 1984), aff'd 66 N.Y.2d 970 (1985)(New York law precludes a plaintiff from seeking damages in

---

[7] The transaction described in the January Proposal is exactly the same as that addressed by the Roer court – a loan in exchange for a note and warrants to purchase stock. See Roer, 198 F.Supp.2d at 225. Indeed, R.C.C. essentially admits that the instant transaction involved the purchase or sale of a "security" by defining it as an "investment" (Complaint, ¶7 – R.C.C. sought financing from "third-party investors").

[8] PrimeRevenue would also be entitled to rescind the January Proposal and receive the return of its entire $30,000 as set forth in its second counterclaim pleaded in the alternative. 15 U.S.C. §78cc(b); Torsiello, 2008 N.Y. Misc. LEXIS 2879 at *17(pleaded contract illegal and unenforceable under Exchange Act as well as New York common law); First Amended Answer and Counterclaim, Second Counterclaim.

excess of amount set forth in liquidated damages clause); Chandy v. RaceTrac Petroleum, Inc., 147 Fed. Appx. 811, 813 (11th Cir. 2005)(Georgia law).

Thus, assuming *arguendo* PrimeRevenue did somehow breach a provision of the January Proposal, R.C.C.'s sole remedy would be the retention of the $30,000 acceptance deposit PrimeRevenue made at the time it signed the proposal (First Amended Answer and Counterclaims, Ex. A: p. 3 "Acceptance Deposit" - $30,000 deposit "a fair and genuine estimate of the damages that would accrue to R.C.C. in the event of [PrimeRevenue's] default"). R.C.C. did retain the full amount PrimeRevenue's $30,000 deposit (Complaint, ¶¶6,10). Consequently, it is not entitled to any additional damages, even if PrimeRevenue breached the January Proposal, and R.C.C.'s breach of contract claim must therefore be dismissed.

### F. Judgment on the Pleadings is Also Warranted With Respect to PrimeRevenue's First Counterclaim

The January Proposal clearly provides that, if R.C.C. fails to provide the financing identified therein, it must return $10,000 of the acceptance deposit to PrimeRevenue (First Amended Answer and Counterclaim, Ex A: p. 3 "Acceptance Deposit"). R.C.C. admits that MMV Finance, and not R.C.C., provided financing to PrimeRevenue (Complaint, ¶¶7,8). Accordingly, R.C.C. breached the January Proposal by failing to return $10,000 to PrimeRevenue, and judgment for PrimeRevenue should be entered in that amount on its first counterclaim[9].

---

[9] Since PrimeRevenue's second counterclaim is pleaded in the alternative, the granting of this motion would result in the disposition of this entire action.

## CONCLUSION

Based on the foregoing, the accompanying affirmation and exhibits, and all the proceedings heretofore had herein, the Defendant PrimeRevenue respectfully requests that the Court grant this Fed.R.Civ.P. 12(c) motion for judgment on the pleadings in its entirety.

Respectfully submitted,

VINCENTI & VINCENTI, P.C.

By: _____
Paul J. Vincenti
A Member of the Firm
Attorneys for Defendant
80 Broad Street, 12th Floor
New York, New York 10004
(212) 509-4600
(212) 509-0406
paul.vincenti@vincenti.com

Dated: January 15, 2010